Thank you, your honors. May it please the court, my name is Matthew Gunn, criminal justice act panel attorney from Boise representing Mr. Gomez on appeal here today. Mr. Gomez is appealing the district court's determination that he was in fact a career offender. Mr. Gomez was convicted after a jury trial of one count of possession of methamphetamine with intent to distribute, but then he was sentenced to a far greater term of incarceration than he deserved based on the fact that he is not in fact a career offender. There are only two predicate career offender offenses at issue in Mr. Gomez's case, an assault with a deadly weapon under California Penal Code section 245 and then a methamphetamine conviction. And that's the only one that's at issue today? Yes, your honor, just the California Health and Safety Code 11378, which the other two cases have dealt with here today. And this case is frankly a difficult one from a procedural posture because there have been such a shifting and changing landscape in the middle of appeals, sentencing, decisions being issued after sentencing, opinions being pulled back in the middle of to keep up with. Why was there plain error? I'm sorry, your honor? Why was there plain error in this case? Assuming plain error review applies, was there plain error? Well, I would take the position that plain error does not apply. I don't know if your honor wants me to address that issue first or simply move to the plain error. But as discussed in the briefing, I do believe that this issue was preserved below. You think it's preserved because you challenged the career offender finding? And is this part of that? Yes, your honor. It's clear that career offender finding was challenged below. On what basis? On the basis of the PSR. The objections to the PSR, your honor, I would refer you to that. No, I mean, but why did you think this wasn't a career offender case below? What did you tell the district judge? I'm sorry. I'm about to give an answer that the panel never likes. I wasn't the... No, I meant... I didn't mean you, I meant your side. The reason that Mr. Parnes gave below was concern about the assault with a deadly weapon under section 245. That's what was primarily... I want a caveat there. That's what was primarily focused on at sentencing. I submit in the written objections to the PSR, it's clear that both convictions are being challenged as a basis and a predicate for a career offender finding. Well, I don't... I've read the objections to the PSR. They don't say the California statute is overbroad, do they? No, your honor. I couldn't stand in front of the court and say that the issue of whether or not 11378 was briefed below or even raised. The overbreadth issue wasn't even... I mean, not only not briefed, but nobody... I don't see the words overbreadth anywhere. I can't point your honor to the words overbreadth anywhere in the record below either, your honor. My argument is that the career offender status based on both predicate offenses is clearly raised at PSR 083. So your argument's the same one that was made in the last case. And then applying Hernandez, Walton, Pilares-Golan. Those are all cases in which career offender status was challenged. And then the Ninth Circuit has said that a different theory is preserved for appeal as long as the career offender status was challenged below. Walton and Hernandez both presented very different theories below to what was ultimately deemed preserved at the Ninth Circuit, your honor. And so on the basis that Mr. Gomez's career offender status on the basis of both predicate offenses was objected to below, and then a different theory is presented on appeal, that doesn't take us into plain error. It keeps us in de novo review, your honor. So at the time of Gomez's sentencing, Lorenza 1 had been argued but not decided. Correct, your honor. Does that have any bearing? I mean, should you have been unnoticed to raise that issue at that point? I don't believe it has any bearing, your honor. Because the issue was preserved below, I don't think that changes the analysis as far from a preservation perspective. For better or for worse, that argument was not briefed. But I think whether or not it was briefed is a different question from preservation. And I think under this record, we have preservation even if we don't have briefing. This is a case in which there is no evidence below regarding the geometric isomer. We have those couple of memdisps, and they may not be precedential, but to the extent we want to look at their reasoning, we can, that deal with that kind of situation and say, if there is plain error review, you lose. Are they wrong? I'm frankly not certain what memdispo is saying. If there's plain error review, I lose your reference. Well, they say this. If there's plain error review, we can't find that the judge plainly erred because it depends on a factual determination and other things never raised below. Your honor, I think it would be more apt for a factual determination if there were some factual determination made below. But the absence of a factual determination, I would submit, takes us into the realm of a question of law. The lone case cited by the government to support the idea that it is a factual issue is the Yijian Zhu case. I'm sure I'm mispronouncing that. But that had to do with the court making a factual finding regarding restitution below. Well, let's go back to the question Judge Wardlaw asked before. If, in fact, there were no prosecutions ever for the geometric isomer, even if the statute were facially overbroad, I think it's clear under the Supreme Court precedent we could say there's no realistic possibility that it would ever be applied. So they're saying not only are there no prosecutions ever, but that's because it doesn't exist. It seems to me that argument has some purchase. And so what do we do with it in the case where nobody addressed it? Well, your honor, I think it's making an assumption regarding a factual finding that this record simply doesn't have. And the district court is the right place to conduct that factual finding. And I think that the Seventh Circuit, I'm not sure if the court wants to dive into the semantics of the isomer definitions of the Zamudio case, or the de la Torre case, but they found plain error. But they did find it in the context of a very different statute. They covered all isomers, correct? I would quibble, your honor, with calling it a very different statute. Well, okay. But they did say, for example, your affidavits don't help us because they only deal with the geometric isomer, and we don't know whether there are other isomers. I don't even know whether there are geometric isomers. In fact, I don't know whether there's optical isomers. So I'm pretty ignorant on this topic. I don't either, your honor. And frankly, I've been spending the past week trying to prepare for this argument and get up to speed on organic chemistry, because we had none of that below in our case. But I would submit that there's something different and integral from the de la Torre case in the sense that I understand the point and the distinction the court is trying to make with regards to, okay, the Indiana statute is more broad because it doesn't have these definitions of isomers. But then when you drill down further into the Indiana statute, there are instances in which, with regards to other controlled substances, the Indiana legislature made a decision to delineate optical different types of isomers. And so I don't think we can completely dismiss the fact that the Indiana legislature made a decision with regards to methamphetamine to have a broader definition. I believe that that is an intentionally broad, not oversight or laziness, but intentional. And I think we have to presume the same thing about the California legislature until proven otherwise. And that fact-finding has to take place in the district court, not here above. Perhaps it's legislative. Perhaps it's answered by the legislature needs to amend its statute if geometric isomers do not exist. If they don't exist, I would presume that that's what California would do. Going back to your example earlier with my... You assume rationality in legislation. I'd love that to be true. Your Honor, I come from Idaho where we have the same issue as well. But going back to your example earlier about magic fairy dust, if a legislature decided that they wanted to include that language in the statute until proven otherwise, I think it's the onus of the courts to presume that there was a reason they did it. There's compelling information out there that made them want to do that. And it is facially overbroad until proven otherwise, Your Honor. And we'll submit that that's the case here with regards to 11378. Until proven otherwise, it is absolutely facially overbroad in accordance with De La Torre and Lorenzo too. But doesn't the defense have to come up with the state that shows that the prosecution is real or is real in the state of California, that there are some cases in California prosecuted on the basis of the geometric isomers? I don't believe... It's not my understanding that Ninth Circuit law requires actual evidence of prosecution if the statute is facially overbroad. We do look at the cases and say, what conduct is prosecuted? What's the scope or breadth of the conduct that's prosecuted under this statute to determine whether it's really overbroad or not? Yes, Your Honor. But I believe that that is distinct from the analysis of whether or not it is facially overbroad in the first instance. Sure. But the Supreme Court, unfortunately or fortunately, has told us that it's not overbroad if there's not a realistic possibility that the overbreadth will be enforced. Now, you can put aside whether or not that applies here, but it does mean we can have a statute that's facially overbroad that we wouldn't find overbroad under the Supreme Court direction, correct? I don't know that I would agree with that, Your Honor, based on the way... I don't agree with the Supreme Court either, but they said it. Fair. But based on the way that I've read Duenas-Alvarez and Grissel, Duenas-Alvarez said that if the only way we get to overbreadth is legal imagination and machinations where it's lost... So why isn't this legal imagination? The government says it doesn't exist. We could never prosecute under that. No, the problem I have with that is that it's like factual imagination. Yeah, I meant so... And in the real world... Okay, so that's a good question. Is legal imagination different than factual imagination? Well, there's two issues with that, Your Honor. I can't answer the organic chemistry and that's why we need a developed record. And second of all, I submit that Grissel does answer that in the sense that it draws a distinction with Duenas-Alvarez in saying that Duenas-Alvarez, the statute there, isn't facially overbroad. It's only overbroad because of the legal imagination. But where it is facially overbroad, then the realistic probability prong is satisfied by an assumption that the state will enforce the facial overbreadth. Interesting. Okay, thank you. You're two minutes over, so... I apologize. I'm into reserves. I'm from... We'll hear from Ms. All again. You used it in advance. Thank you. Ashley All for the United States again. Starting with the standard of review, there is nothing that distinguishes this case from Renteria-Aguilar and Luque-Rodriguez. Plain error review should apply and plain error review means the defendant cannot win on appeal. If the court has any more questions about the standard of review, I'm happy to answer them. Otherwise, I will take my last shot at the substance of organic chemistry. The first thing I'd like to say is that on the overbreadth question of whether or not California law is facially overbroad, Vega-Ortiz is an example of a case in which this court already does recognize that not all semantic overbreadths are treated alike. Not all semantic overbreadths mean automatically that a defendant satisfies Duenas-Alvarez. Certainly in Griselle, that kind of overbreadth does. It's clear. In Vega-Ortiz, however, the court addressed a situation where federal law accepted some LMeth products. Conveniently, this is about other isomers of methamphetamine, optical isomers. And so the court addressed arguments that because federal law accepted some LMeth products and California law didn't, that that was overbroad and indivisible and all the same results from Lorenzo should apply. And the court held in Vega-Ortiz that defendant had to come forward with evidence that those LMeth products actually were prosecuted in California courts. Defendant had no such evidence and so he could not prevail on appeal. Was there a facial overbreadth issue in that case? Yes, absolutely. And because the issue is federal law accepted this LMeth product, right? There was a, in the Venn diagram, the federal definition was narrower than the state one because the state one had no such exception. There was a similar situation, Aguilar-Rios about federal firearms. But in any case, the point being the Venn diagrams look the same. Whether or not you characterize it as an overbreadth because California adds something or because the federal law deletes something, you're looking at identical Venn diagrams for purposes of the categorical approach. But what the court recognized in Vega-Ortiz and what the court should also recognize here, that in that context, that is just not a clear enough semantic overbreadth automatically to satisfy Duenes-Alvarez. And defendant's arguments to the contrary read Griselle as authoritative and Duenes-Alvarez as a secondary precedent when in fact it has to be the other way. The Supreme Court's rule in Duenes-Alvarez that there must be a realistic probability is the controlling rule. Griselle is an application of that rule and it just doesn't apply here for the same reasons it didn't apply in Vega-Ortiz. Because the grammar of the statute alone does not establish a reasonable possibility of overbroad application for all the reasons we've discussed before. To go to Judge Wardlaw's point about California amending the statute, again, I don't think there's anything wrong with the statute. It's just efficient. There's all sorts of contexts in which you might have a definition that does and doesn't apply in particular instances. But you're asking whether it does or does not exist. Correct, Your Honor. But you might have, on the fly I'm not going to be able to come up with one, but examples where for efficiency you say for all the following things it includes this and that and the other thing. And some of the members of that list might not have all of those things. It's an over-inclusive definition but it's not one that takes a stance about organic chemistry or about the existence or nonexistence of anything. It's just an efficiency. It's a grammatical efficiency from a legislative standpoint. And so, again, this all comes back to what I think the appropriate disposition of all of these cases are, is that California law is not overbroad on its face in the way that Grisell recognized. As a result, defendants bore the burden to come forward with evidence of the likelihood of a realistic probability under Duenes-Alvarez through some combination of coming forward with cases where they're actually prosecuted or frankly at minimum demonstrating that these isomers exist. They did neither of those things and that should have been the end of it, certainly in the Plain Arrow cases, but also in Gamboa. Frankly, the government's declarations about the nonexistence of methamphetamine were overkill. We didn't even need to get there because the facial non-overbreath of the statute put the burden on defendants. That avoids all of the parade of horribles about many trials that have been talked about by the defense in these cases because it ends it unless the defense comes out. However else we might characterize the Seventh Circuit's approach, that would put us in direct conflict with the statute. I think I made the best argument in the 28J that I can. That one sentence is dicta and frankly it's incorrect. I hope it will get fixed on re-hearing because at minimum a court cannot ignore evidence when it's preserved, ignore evidence that a state statute actually isn't overbroad. The ultimate question is not a grammar question. The ultimate question is does this state criminalize behavior that would not be criminalized under federal law? And to turn a blind eye to that because of some... Even though it's not in the record in that case in front of you? In the Seventh Circuit it wasn't. Particularly on Plain Arrow, I think that actually makes the Seventh Circuit's dicta even more confusing. If they don't cite Duenas-Alvarez, it's not consistent with it and I hope that that line, which is all the defense really relies on, will get changed on re-hearing. I want to ask you a question about an entirely separate topic and I think I know the answer to it. These cases are all technically modified categorical cases because of the list of controlled substances in California. If we were to look at the Shepard documents in the case, could we tell whether or not these defendants were prosecuted for the geometric isomer or the optical isomer? No. Okay. That's the problem. If in fact these different isomers exist within methamphetamine, you would have to have every drug, every time methamphetamine was prosecuted, have to have its chemical composition analyzed to see whether it has these particular types of isomers to see whether this person was convicted of that one versus another. So from California... Exists. If they existed. I'll make the easy answer to the question that I think both these get to is that we have not taken the position that if this is a real problem, that California law is divisible with respect to isomers. There's no evidence that a jury has to find what kind of isomer somebody possessed. And there would be no incentive for any California prosecutor to ask which isomer. Correct. But to go back to Judge Wardlaw's question earlier, there is just no evidence that there are any cases about geometric isomers at all. There's an absence of evidence. And because it was the defendant's burden to come forward with that evidence under Juanez-Alvarez, that ends the inquiry. It means that California law is not overbroad and the result should be exactly the same as it was in Vega-Ortiz. And your answer, and I know we're switching back to the first case where the issue was preserved by you, that the defendants weren't excused in their burdens because the district judge said, well, Lorenzo's come down. I don't have to worry about any of this. So this, if the court adopts the overbreadth argument that I'm making, this is an argument as a matter of law, which was well preserved below. There's no reason not to say that the California law is not overbroad in its base. Defendant did not meet her burden to demonstrate a realistic probability. And therefore, on this record, it's over. And this actually does get to your concern about hearing a little bit. The posture of in making a ruling that I think is important for the administration of justice in the circuit. If the court holds that on this record, on an undisputed record where the defendant had an opportunity to present evidence and did not, that in that case, the court erred in dismissing the indictment, then the case goes back because it's a government appeal of a dismissal. And so the defendant is not incarcerated at that point. The defendant is put back in the trial court at that point and can raise other motions if she wants to. And so it's not a last shot. If she actually has an expert waiting in the wings, she can renew a motion based on a new factual record. It's actually the inverse of what Lorenzo itself said. Lorenzo said, the government failed to do this here. We're not foreclosing their opportunity to do it in a future case, but here's what happens on this record. That's exactly what the court should do here. Here's what happens on this record. The district court erred in dismissing the indictment, and that should be reversed. And in these other cases, there was no plain error, and the court should be affirmed. All right. Thank you, counsel. Did you have, you didn't have any time. You went over. Do you need any more time? If I could briefly, Your Honor. Okay. I'll give you a minute. Or if you want me to correct. I'll give you a minute. You came all the way from Boise. My poor wife is going to get some snow off of her anyway. She's not going to be happy to hear about this. Your Honor, I would only address very briefly the notion that I inverted Griselle and Duenas Alvarez. That is not the case whatsoever. Duenas Alvarez, Supreme Court precedent, said that there has to be a realistic probability. Understand that. Accept that Supreme Court precedent. Okay. In that case, I discussed that the only overbreath was through legal imagination. No overbreath on the face of the statute. Griselle took the realistic probability standard and considered how can that standard be satisfied. And the Ninth Circuit ruled that the realistic probability standard is satisfied, not ignoring the realistic probability standard from Duenas Alvarez, but it said it is satisfied when the statute is facially overbroad because you can assume that a state will enforce based on the overbreath. That was a circumstance where it was at least theoretically possible to prosecute for the overbroad offense, correct? Yes, Your Honor. And until proven otherwise, whether it's magical fairy dust or geometric isomers, it remains theoretically possible to prosecute under 11378 for the same reasons, Your Honor. All right. Thank you very much. U.S. v. Gomez is submitted.
judges: Wardlaw, Hurwitz, Bataillon